WOODALL, Justice.
This is an action to recover certain property alleged to be a portion of the estate of the remaindermen after the death of the life tenant. Dewey Williams, as executor of the estate of Hattie E. Williams, deceased, and others (hereinafter referred to collectively as “the remaindermen”), appeal from a judgment of the Walker Probate Court in favor of Faye W. Burgett, in their action to recover from Burgett the remainder of the estate of Lacy S. Williams, after the death of Hattie E. Williams, the life tenant. We reverse and remand.
This dispute arises out of “Item two” of the will of Lacy S. Williams, who died before December 14, 1994. At the time of his death, Lacy Williams was the husband of Hattie Williams. Item two provided, in pertinent part:
“I will, give, devise and bequeath all of my property, both real, personal and mixed, wheresoever situated and wheresoever located and in which I may have any interest at my death to my beloved wife, Hattie E. Williams, for and during the term of her natural life, with the absolute power of disposition of all or any part thereof, and upon her death any part of my said estate then remaining shall go [to designated descendants, with the rest and residue to children then living or their survivors, sharing equally in fee simple absolute].... ”
(Emphasis added.)
Hattie Williams sold timber from the real estate that had passed to her through *598 her husband’s will. With the proceeds of the timber sale, she purchased certificates of deposit (“the CDs”). The CDs were issued in the names of Hattie Williams and her daughter, Faye W. Burgett, jointly, with right of survivorship. Hattie Williams died testate on November 20, 1998; Burgett subsequently redeemed the CDs.
On March 16, 2001, Hattie Williams’s son, Dewey Williams, as executor of her estate and as one of the remaindermen, filed in the Walker Probate Court a “Petition for Determination of Estate Ownership Interest in Certain Assets.” The petition sought a declaration that the proceeds of the CDs were part of the remainder estate created in Item two of Lacy Williams’s will. The court ordered that the other remaindermen be served with notice of the proceedings.[1]
The case was submitted to the probate court on stipulated facts. On June 20, 2001, the probate court entered a final judgment. It held that “the proceeds from the disposition of [the timber] held in certificates of deposit with joint ownership with right of survivorship” were not part of the life estate of Hattie E. Williams, and, consequently, that the proceeds from the CDs passed to Burgett, “as the surviving joint tenant” of the CDs. From that judgment, the remaindermen appealed.
The sole question on appeal is a legal one — whether, upon the death of a life tenant, the remaindermen are entitled to the traceable proceeds of a sale of assets of the estate by, and during the lifetime of, the life tenant, who had an absolute power of disposition as to the estate. Because we answer that question in the affirmative, we conclude that the probate court erred.
To be sure, the probate court’s judgment was in accord with the common law. Under the common-law rule, where a do-nee received what purported to be a life estate, coupled with an absolute power of disposition, the donee was deemed to have received an estate in fee simple absolute, and the remaindermen took nothing. Gaylord v. Goldblatt, 423 So.2d 203 (Ala.1982); Rutledge v. Crampton, 150 Ala. 275, 43 So. 822 (1906); Young v. Sheldon, 139 Ala. 444, 36 So. 27 (1904).
However, the common-law rule “often resulted in a clear defeat of the testator’s real and evident intention.” Reeves v. Tatum, 233 Ala. 455, 457, 172 So. 247, 249 (1937). Thus, in order “to protect the estates of those in remainder,” the Legislature modified the common law. Alford’s Adm’r v. Alford’s Adm’r, 56 Ala. 350, 353 (1876). Specifically, Ala.Code 1975, § 35-4-292(a) provides:
‘When an absolute power of disposition, not accompanied by any trust, is given to the owner of a particular estate for life or years, such estate is changed into a fee absolute, as to the rights of creditors and purchasers, but subject to any future estates limited thereon, in case the power is not executed or the lands sold for the satisfaction of debts during the continuance of such particular estate.”
(Emphasis added.)[2] “The obvious intent of § 35^-292 was to effect a change in the common law so as to give effect to the testator’s intent, ... where clearly provided in the will, allowing the remainderman to receive the property if the life tenant died without disposing of it.” Gaylord v. Goldblatt, 423 So.2d 203, 204 (Ala.1982).
*599 The parties agree on these general principles of law. They also agree that Hattie Wilhams possessed an “absolute power of disposition,” within the meaning of § 35-4-292. Their disagreement concerns the status of the traceable proceeds from the inter vivos disposition of an asset of the estate, namely, the proceeds from the timber sale, which formed the corpus of the CDs.
In that connection, Burgett argues that “[s]ince [Hattie Williams] did have an absolute power of disposition, the proceeds from her sale of timber were not limited to her maintenance and support.” (Brief of Appellee, at 18) (emphasis added). Lacy Williams’s will, Burgett contends, “did not grant a remainder interest in the proceeds of any disposition.” (Brief of Appellee, at 15) (emphasis added). Thus, she insists, “[t]he proceeds became [the property of Hattie Williams] absolutely and cannot be held to be the property of the remainder-men. The proceeds were hers to do with as she chose” (Brief of Appellee, at 18), “including placing the funds in certificates of deposit with the right of survivorship.” (Brief of Appellee, at 9.)
Nearly 100 years ago, this Court squarely addressed and rejected an identical argument. Smith v. Cain, 187 Ala. 174, 65 So. 367 (1914). The dispute in Smith arose out of a provision in the will of Thomas Y. Cain, granting his wife, Nancy J. Cain, a life estate in certain real estate, coupled with “an absolute right to dispose of all of the testator’s property.” 187 Ala. at 177, 65 So. at 368. The dispute involved the proceeds of the sale of the real estate by the life tenant, which proceeds were converted to cash deposits and investments in mortgages. 187 Ala. at 176, 65 So. at 368. After the life tenant died, the remaindermen sued John G. Smith, the life tenant’s testamentary executor, to recover the remainder estate, namely, the cash and mortgages. The chancellor overruled Smith’s demurrer, and Smith appealed. This Court affirmed. Id. at 181, 65 So. at 369.
On appeal, Smith argued, as Burgett does here, that once the life tenant exercised the power to sell any of the property “the proceeds at once became [the life tenant’s] absolute property, and, whether consumed by her or not, were absolved from any element of trust in favor of the remaindermen heirs at law.” 187 Ala. at 177, 65 So. at 368. Smith’s “theory [was], in short, that the interests of the remain-dermen [could] attach, under the terms of the will, only to such of the testator’s property as remained in the hands of [the life tenant] at her death unchanged in kind and inform.” 187 Ala. at 177-78, 65 So. at 368 (emphasis added).
Although it noted that Smith’s argument was “not without some degree of plausibility,” the Court rejected the argument as “unwarranted and unsound.” Id. (Emphasis added.) More specifically, the Court explained:
“The intention of the testator is clear, and it is expressed in language that is simple and intelligible. He desired that his widow should have the unrestricted enjoyment of his estate Tor her support and comfort,’ and to that end she was authorized to sell and convey during her lifetime as much of it as she wished. It was equally his desire that whatever was left of the estate at her death should go to his heirs at law. To hold that this latter provision contemplated as the residuum of the estate only so much of it as remained unchanged in kind or form, would require a narrow and extremely technical construction of the will, and would unquestionably ignore and defeat the clear design of the testator.
*600 “Dealing with a similar will and a similar contention, the Supreme Court of Missouri, through Brace, J., said:
“ ‘Nor do we think such intention should be defeated by a purely technical construction of the will. On the contrary, such intention should be carried into effect, as we think it may well be, on principle and upon the authority of the adjudicated cases.... From which we think the doctrine may be deduced that a power of disposition, superadded to a life estate, in a mixed estate of real and personal property given to the wife as a present provision, ought not, against the intention of the testator, to defeat a future provision made for his children, to take effect at her death, out of the same estate, if there remain anything of that estate to satisfy such provision in the hands of the life tenant at her decease, whatever change in the form of the property she may have effected under the power given her in the will. Unless this doctrine, consonant with justice and common sense, is maintained and applied, in many cases in which wills are drawn by unskillful persons, the manifest intention of the testator must be defeated, a result to be avoided, if possible, in all cases.’ ”
187 Ala. at 178-79, 65 So. at 368 (emphasis added). Thus, the Court held that the traceable proceeds of the sale of the property were “in equity and good conscience a part of the estate left by Thomas Y. Cain, and passed under his will to his heirs at law upon the death of the life tenant, Nancy J. Cain.” 187 Ala. at 180, 65 So. at 369 (emphasis added).
Burgett offers no argument as to why Smith should not control this case. Indeed, she fails to cite Smith. Instead, she relies on Nevin v. Nevin, 366 So.2d 266 (Ala.1979). However, Nevin is inapposite.
The action in Nevin challenged the efficacy of a purchase of property included in the life estate by the remaindermen. More specifically, lia J. Nevin “executed four deeds [apparently gratuitously] conveying to each of her four children [the remaindermen] 80 acres of land” in which she held a life estate, coupled with an absolute power of disposition. Id. at 267. Grover A. Nevin, one of the remainder-men, “refused delivery of the deed.” Id. Following the death of his mother, Nevin commenced an action “to declare the [gratuitous] deeds ineffective and to order a sale for division.” Id. The trial court “granted summary judgment, [holding that] lia J. Nevin had absolute power to convey the land by deed to the children.” Id. This Court affirmed.
The dispositive issue in Nevin was whether “the children who received deeds from Mrs. Nevin [were] purchasers under [§ 35-4-292].” 366 So.2d at 268. If so, then they acquired “fee simple title as grantees and not as remaindermen under the will.” 366 So.2d at 268. The Court might otherwise have stated the question as whether § 35-4-292(a), which preserves the common-law rule as to “creditors and purchasers,” actually means “purchasers for value.” The Court answered that question in the negative.
In doing so, it quoted Ala.Code 1975, § 35-4-34, as providing: “‘No deed or other conveyance creating or transferring any interest in land shall be invalid or ineffective because of the fact that it does not recite a good or valuable consideration or no such consideration exists or is given.’ ” 366 So.2d at 269. The Court explained: “Since consideration is no longer necessary for the validity of a deed and since [§ 35-4-292] restate[s] the common law except as to unexercised powers, the legal definition for purchaser as one who takes gratuitously or for value clearly gov *601 erns.” 366 So.2d at 269. Thus, the holding in Nevin was based on the plain meaning of § 35^4-292, read in conjunction with § 35-4-34. In other words, the grantees in Nevin were “purchasers” under the plain language of § 35-4-292 and § 35-4-34.
Burgett is not — and does not claim to be — a “purchaser” under any definition of that term. Indeed, this case involves no issue regarding a purchase, or the purchase of the timber in particular. Indisputably, the timber was an element of the life estate created by the will of Lacy 'S. Williams.
The testator’s intent could hardly have been clearer. He described his descendants’ share as “any part ” of his estate— whether “real, personal [or] mixed” — remaining after the death of his wife. (Emphasis added.) The proceeds of the timber sale over which Hattie Williams retained power and control at her death were some “part” of his estate. As the Court stated in Smith: “To hold that this ... provision contemplated as the residuum of the estate only so much of it as remained unchanged in kind or form, would require a narrow and extremely technical construction of the will.” 187 Ala. at 178, 65 So. at 368 (emphasis added).
Thus, we hold that the proceeds remaining under the power and control of Hattie Williams, as life tenant,[3] namely, the CDs, were a part of the life estate created in Item two of Lacy Williams’s will, which passed to the remaindermen at the death of the life tenant.[4] Any other construction “would unquestionably ignore and defeat the clear design of the testator.” Smith, 187 Ala. at 178, 65 So. at 368. See also Edwards v. Williamson, 202 Ala. 483, 484, 80 So. 867, 868 (1919) (the remainder includes “the proceeds of the sale of [the testator’s] lands left by the [life tenant] ... and which had not been consumed by [her] prior to her death”). For these reasons, the judgment of the probate court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
HOUSTON, SEE, and LYONS, JJ., concur specially.
MOORE, C.J., dissents.

. The remaindermen are Dewey Williams, Frank Williams, Charles R. Williams, Jeanette Shaw, and the appellee, Faye Burgett.

. The earliest predecessor of this provision was codified in 1852. See Ala.Code 1852, § 1325.

. Burgett concedes that "the proceeds of the timber sale [belonged to Hattie Williams] to do with as she saw fit [before her death].” (Brief of Appellee, at 21-22.)

. The parties present no issue or argument regarding the proper disposition of the interest that has accrued on the CDs. Therefore, we express no opinion on that issue.